# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CUBE INFRASTRUCTURE )
MANAGERS SA, acting on behalf of )
CUBE INFRASTRUCTURE FUND )
II, an independent Luxembourgian )
Management Company, )
                                       )
        Plaintiff, )    C.A. 18-79-GMS
                                         )
v. )
                                         )
GRANAHAN MCCOURT DUBLIN, )
LLC, a Delaware Limited Liability )
Company and OAK HILL )
ADVISORS, L.P., a Delaware Limited )
Partnership, )
                                       )
        Defendants. )

## FIRST AMENDED ANSWER TO COMPLAINT

Defendants Granahan McCourt Dublin, LLC ("GMC") and Oak Hill Advisors, L.P. ("Oak Hill") (together, "Defendants"), by and through their undersigned counsel, respond to the allegations in the Complaint (D.I. 3) as follows:

## NATURE OF THE ACTION

1.     Cube brings this action for (a) breach of a September 20, 2016 mutual non-disclosure agreement between GMC and Cube (the "NDA"), that was entered into to facilitate negotiations of a transaction whereby Cube would acquire for €141.50 million a significant stake in non-party GMC-D OH (Ireland) Holdings Limited ("Holdings"), (b) tortious interference with the NDA by Oak Hill Advisors, L.P. ("Oak Hill"), and (c) tortious interference with a March 2, 2017 letter of intent (the "LOI") signed by non-party

1

Granahan McCourt Dublin (Ireland) Limited ("FundCo"), non-party ESCF Investment S.a.r.l. ("ESCF"), and Cube by GMC and Oak Hill.

**ANSWER:** Defendants admit only that Cube purports to bring claims for breach of contract and tortious interference, but deny that Cube has any basis for such claims, that GMC breached any contract, or that GMC or Oak Hill engaged in any tortious interference. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 1 of the Complaint.

2.      Rather than comply with their obligations under the NDA and the LOI, GMC, along with Oak Hill and two investors in Holdings, FundCo and ESCF, secretly used the Cube transaction documents and other information provided under the NDA and LOI to expeditiously reach a transaction €19 million higher in consideration with AMP Capital Investors Limited ("AMP"). GMC breached the NDA and Oak Hill tortiously interfered with the NDA by inducing or otherwise causing GMC not to perform the contract. GMC and Oak Hill also tortiously interfered with the LOI by respectively inducing or causing ESCF and FundCo to disclose confidential information, to breach its exclusivity provision, and to breach the provision requiring their good faith negotiations of the proposed transaction with Cube.

**ANSWER:** Defendants deny the allegations in Paragraph 2 of the Complaint.

## THE PARTIES

3.      Plaintiff Cube Infrastructure Managers SA is an independent Luxembourgian management company focusing on investments in the European infrastructure space. Its principal place of business is 41 Avenue de la Liberte - L - 1931 - Luxembourg. Cube's management is comprised of a close-knit team with broad industrial and managerial experience, and with a highly international profile. Cube's objective is to generate a combination of current

2

yield and long-term capital appreciation through investments in regulated, brownfield infrastructure assets, addressing the essential infrastructure needs of the local communities, primarily within western Europe, and with a "Buy-Grow-and-Hold" strategy. To do so, Cube takes control or co-control positions in mid-caps with highly competitive runners up positions and develops their potential through organic growth and synergetic add-on investments. Cube focuses on strategic infrastructure markets offering sustainable growth potential principally driven by deregulation and/or market consolidation needed to improve the efficiency of infrastructure and public services. Rather than being a pure financial player, Cube positions itself as a strategic partner, bringing both capital and management expertise to its portfolio companies. The assets are managed proactively, with a long-term perspective, based on the team's expertise and its long- standing ties with infrastructure contractors, operators and public authorities. Cube Infrastructure Managers SA is the manager of Cube and as such has full and complete authority to act on behalf of Cube.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint.

4. Defendant GMC is a Delaware limited liability company. GMC is owned and controlled by Granahan McCourt Capital. Granahan McCourt Capital is a private investment firm focused on connecting people to innovation in technologically underserved areas of the world. Its team includes some of the most experienced and successful entrepreneurs and business leaders in technology, media and telecom. Granahan McCourt Capital was founded by David C. McCourt, who currently serves as its Chairman and Chief Executive Officer. Mr. McCourt is an Irish-American entrepreneur with experience within the telecom and cable television industries. Throughout the negotiations of the proposed

3

transaction it appeared that Mr. McCourt not only spoke on behalf of GMC and Fund Co, but also on behalf of ESCF and Oak Hill, because representatives of those entities hardly ever participated in transaction meetings or conference calls.

**ANSWER:** GMC admits that it is a Delaware limited liability company. GMC denies the allegations in the second sentence of Paragraph 4 of the Complaint. GMC admits the allegations in the third, fourth, fifth and sixth sentences of Paragraph 4 of the Complaint. GMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in the seventh sentence of Paragraph 4 of the Complaint. Oak Hill is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint.

5. Defendant Oak Hill is a Delaware limited partnership with its principal place of business in the State of New York 1114 Avenue of the Americas, 27th Floor, New York, New York 10036. Oak Hill directly or indirectly wholly owns and controls non-party ESCF, a Luxembourgian company.

**ANSWER:** Oak Hill admits the allegations in the first sentence of Paragraph 5 of the Complaint. Oak Hill denies the allegations in the second sentence of Paragraph 5 of the Complaint. GMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint.

6. Non-party AMP is a global investment manager with a large presence in Australia.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint.

4

7.        Non-party Holdings is an Irish company founded in 2013.  Its holdings include enet, which operates a fiber optic infrastructure known as the Metropolitan Area Networks on behalf of the Irish government and Airspeed Telecom, a leading provider of high performance telecommunications products and services to enterprise, public sector and SME businesses. Prior to an investment by AMP, Holdings was owned by ESCF, holding 48%, and FundCo, holding 52%.

**ANSWER:**   Defendants admit the first sentence of Paragraph 7 of the Complaint. Defendants admit that Holdings, through its affiliates, owns enet, which as a part of its operations includes a fiber optic infrastructure known as the Metropolitan Area Networks on behalf of the Irish government, and Airspeed, a leading provider of high performance telecommunications products and services to enterprise and public sectors.  Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in the second sentence of Paragraph 7 of the Complaint.  Defendants admit that prior to an investment by AMP, Holdings was owned by ESCF, holding 48%, and FundCo, holding 52%.

## JURISDICTION AND VENUE

8.        The Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332 (diversity of citizenship jurisdiction).  GMC is a Delaware limited liability company with a principal place of business, upon information and belief, in either Huntingdon Valley, Pennsylvania or Miami, Florida.  Oak Hill is a Delaware limited partnership whose principal place of business, upon information and belief is in New York, New York. Cube is a Luxembourgian management company headquartered in Luxembourg.

5

Cube seeks damages reasonably believed to be in excess of seventy-five thousand dollars, exclusive of interest and costs.

**ANSWER:** The first sentence of Paragraph 8 states a conclusion of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 8 of the Complaint. GMC admits it is a Delaware limited liability company and denies any remaining allegations in the second sentence of Paragraph 8 of the Complaint. Oak Hill is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 8 of the Complaint. Oak Hill admits it is a Delaware limited partnership with a principal place of business in New York, New York. GMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 8 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 8 of the Complaint. With respect to the fifth sentence of Paragraph 8, Defendants admit that Cube purports to seek damages in excess of seventy-five thousand dollars, but denies Cube is entitled to any damages or relief. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 8 of the Complaint

9. The Court may exercise jurisdiction over the person of GMC because GMC is a Delaware limited liability company.

**ANSWER:** Paragraph 9 states a conclusion of law to which no response is required.

10. The Court may exercise jurisdiction over the person of Oak Hill, because Oak Hill is a Delaware limited partnership.

6

**ANSWER:** Paragraph 10 states a conclusion of law to which no response is required.

11.    Venue is proper under 28 U.S.C. § 1391, because GMC is a Delaware limited liability company and Oak Hill is a Delaware limited partnership.

**ANSWER:** Paragraph 11 states a conclusion of law to which no response is required.

## BACKGROUND FACTS

12.    The claims asserted against Defendants are related to claims being asserted by Cube against other defendants in parallel actions being filed concurrently in courts in New York and Pennsylvania based on the contacts of those other parties with those jurisdictions.

**ANSWER:** Defendants admit that Cube has filed claims in state court in New York and state court in Pennsylvania against other entities related to the claims asserted in this action. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 12 of the Complaint.

13.    Cube's efforts to acquire a significant or controlling stake in Holdings occurred over a more than 10 month period.

**ANSWER:** Defendants admit that they engaged in discussions with Cube regarding the potential acquisition of shares in Holdings over a period of more than 10 months. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 13 of the Complaint

14.    Cube initially expressed interest in acquiring a 48% stake in the ordinary shares of Holdings in 2016.

**ANSWER:** Defendants admit that Cube initially expressed interest in acquiring an approximately 48% stake in the ordinary shares of Holdings in 2016. Defendants deny any remaining allegations in Paragraph 14 of the Complaint.

7

15.     In order to assist GMC and Cube in their future discussion and business dealings with each other, on September 20, 2016, GMC and Cube entered into the NDA. (A true and correct copy of the NDA is attached hereto as <u>Exhibit A.</u>)

**ANSWER:**     Defendants admit that GMC and Cube entered into a Mutual Non-Disclosure Agreement as of September 20, 2016 ("NDA").  Defendants respectfully refer the Court to the NDA for a true and complete statement of its contents and deny any characterizations inconsistent therewith.  Defendants admit that a copy of the NDA appears to be attached to the Complaint as Exhibit A.  Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 15 of the Complaint.

16.     Paragraphs 2 and 3 of the NDA preclude either party from "discuss[ing], shar[ing] or circulat[ing] the Proprietary Information of the other [provided under the NDA] to any third party ...without the express written consent of the other."

**ANSWER:**     The allegations in Paragraph 16 purport to quote from the NDA, a document which speaks for itself.  Defendants respectfully refer the Court to the NDA for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

17.     The NDA defines "Proprietary Information" as "confidential and proprietary information about such party which shall include all information disclosed, whether disclosed orally, in tangible or electronic writing, or in other form, which a party in the exercise  of reasonable business judgment would consider confidential if it were the party's own information, including without limitation, business information, financial information, records and statements, product information, technical information drawings, blueprints,

8

designs, parameters of design, monographs, specifications, flow sheets, sketches, descriptions, data-, models, trade secrets, software/firmware, source code, object code, technical specifications, know-how, research and development, analyses, compilation and studies, market opportunities, customers and potential customers, business, technical and/or financial affairs of the other Party, machine-readable media of any kind, or any other similar or related information of the parties, their parent companies, or any of their subsidiaries or affiliates which are of a non-public nature."

**ANSWER:** The allegations in Paragraph 17 purport to quote from the NDA, a document which speaks for itself. Defendants respectfully refer the Court to the NDA for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

18. The NDA further provides in paragraph 9 that "[b]oth parties hereto further agree they shall not ... disclose any details connected with such discussions or negotiations to any third party without the prior approval of the other party."

**ANSWER:** The allegations in Paragraph 18 purport to quote from the NDA, a document which speaks for itself. Defendants respectfully refer the Court to the NDA for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

19. Paragraph 11 of the NDA provides that the NDA was effective on the date of signature and that it shall end upon the completion of the transaction "or, in the event where the transaction is not completed, at the end of a two-year period as from the date of signature hereof."

9

**ANSWER:** The allegations in Paragraph 19 purport to characterize and quote from the NDA, a document which speaks for itself. Defendants respectfully refer the Court to the NDA for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

20. On November 30, 2016, Cube and ESCF entered into an exclusivity agreement with respect to the proposed transaction (the "Exclusivity Agreement"). (A true and correct copy of the Exclusivity Agreement is attached hereto as Exhibit B.)

**ANSWER:** Defendants admit that Cube and ESCF entered into a letter agreement dated November 30, 2016. Defendants respectfully refer the Court to the November 30, 2016 letter agreement for a true and complete statement of its contents and deny any characterizations inconsistent therewith. Defendants admit that a copy of the November 30, 2016 letter agreement appears to be attached to the Complaint as Exhibit B.

21. As negotiations processed even further, FundCo, ESCF and Cube entered into a letter of intent signed March 2, 2017, which adopted an amended transaction structure whereby Cube would directly and indirectly acquire 78% of Holdings' shares and included the agreed transaction price and key terms. (A true and correct copy of the LOI is attached as Exhibit C with email addresses redacted.)

**ANSWER:** Defendants admit that FundCo, ESCF and Cube entered into a Letter of Intent dated March 2, 2017 ("LOI"). Defendants respectfully refer the Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith. Defendants admit that a copy of the LOI appears to be attached to the Complaint as Exhibit C. Defendants deny any remaining allegations in Paragraph 20 of the Complaint.

10

22.     Section 7 of the LOI required the parties to it to maintain confidentiality and specifically required that "No party hereto shall disclose (except to its representatives, agents, lenders and investors) the existence of this Letter of Intent or any of the terms and conditions contained herein without the consent of the other party."

**ANSWER:**     Paragraph 22 states a conclusion of law to which no response is required. To the extent a response is required, the allegations in Paragraph 22 purport to characterize and quote from the LOI, a document which speaks for itself. Defendants respectfully refer the Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

23.     Section 8 of the LOI extended the parties Exclusivity Agreement and bound all parties to the LOI to that Agreement.

**ANSWER:**     Paragraph 23 states a conclusion of law to which no response is required. To the extent a response is required, the allegations in Paragraph 23 purport to characterize portions of the LOI, a document which speaks for itself. Defendants respectfully refer the Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

24.     Section 8 of the LOI required the parties to negotiate in good faith and to use reasonable efforts to arrive at mutually acceptable definitive agreements for approval, execution and delivery prior to March 31, 2017, a date which later was extended.

**ANSWER:**     Paragraph 24 states a conclusion of law to which no response is required. To the extent a response is required, the allegations in Paragraph 24 purport to characterize portions of the LOI, a document which speaks for itself. Defendants respectfully refer the

RLF1 19896324v.1

Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

25. Section 9 of the LOI provided that Sections 7 through 10 are legally binding obligations of FundCo, ESCF and Cube.

**ANSWER:** Paragraph 25 states a conclusion of law to which no response is required. To the extent a response is required, the allegations in Paragraph 25 purport to characterize portions of the LOI, a document which speaks for itself. Defendants respectfully refer the Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

26. Section 10 of the LOI provided, among other things, that the laws of the State of New York will govern the LOI.

**ANSWER:** Paragraph 26 states a conclusion of law to which no response is required. To the extent a response is required, the allegations in Paragraph 26 purport to characterize portions of the LOI, a document which speaks for itself. Defendants respectfully refer the Court to the LOI for a true and complete statement of its contents and deny any characterizations inconsistent therewith.

27. Following the execution of the LOI, Cube used it best efforts to negotiate a transaction in good faith consistent with its obligations under the LOI. In contrast to Cube, in an effort to disguise its true intentions to use Cube as a stalking horse for a transaction with another party, GMC sent reassuring emails during the negotiations with respect to the parties' commitment to the proposed transaction, including emails as late as July 2017 when an alternative transaction with AMP was agreed to.

**ANSWER:** Defendants deny the allegations in Paragraph 27 of the Complaint.

12

28.     On or about March 15, 2017, a representative of GMC and Oak Hill sent a draft shareholder agreement to a representative of Cube.  Representatives of Cube subsequently spent extensive time and expense reviewing, editing, negotiating and modifying the shareholder agreement.

**ANSWER:**   Defendants admit that on March 15, 2017, an attorney from Feinberg Hanson emailed a draft shareholder agreement to Mr. Henri Piganeau and other individuals on the email.  Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 28 of the Complaint.

29.     On or about March 18, 2017, a representative of GMC and Oak Hill sent a draft share purchase agreement and sponsoring agreement to Cube.  Representatives of Cube subsequently spent extensive time and expense reviewing, editing, negotiating and modifying the draft share purchase agreement and sponsoring agreement.

**ANSWER:**   Defendants admit that on March 17, 2017, an attorney from Feinberg Hanson emailed a draft share purchase agreement and sponsoring agreement to Mr. Henri Piganeau and other individuals on the email.  Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 29 of the Complaint.

30.     In late March 2017, GMC and Oak Hill requested a fundamental change in the transaction structure in order to address tax issues for the benefit of the sellers.  This very significant change added substantial additional work and complexity to the transaction. Under these new circumstances, the obligation to negotiate in good faith required an extension of exclusivity for a reasonable time to complete the transaction.  The change in transaction structure required that the parties identify the assets and liabilities which were to be

13

transferred from Holdings to GMC D-OH (Ireland) Intermediate Holdings Limited prior to closing, including a privileged preferred bidder position that Holdings was awarded by the Irish Government to pursue the Irish National Broadband Plan, and agree on the way such assets and liabilities would be transferred. Restructuring the transaction also required a significant amount of additional work for the various advisors of the parties, including a new set of audited consolidated accounts for the new target entity, which Cube had to review with its auditors.

**ANSWER:** Defendants admit that in March 2017, GMC requested that Cube purchase shares in GMC-D OH (Ireland) Intermediate Holdings Limited instead of shares in Holdings to address tax issues. Defendants deny any remaining allegations in Paragraph 30 of the Complaint.

31. The LOI's exclusivity provisions were extended by letter on April 4, 2017 (the "LOI Amendment") until April 10, 2017. (A true and correct copy of the LOI Amendment is attached as <u>Exhibit D</u> with email addresses redacted.)

**ANSWER:** Paragraph 31 states a conclusion of law to which no response is required. To the extent a response is required, Defendants state that a letter dated April 4, 2017, attached to the Complaint as Exhibit D, appears to have been executed by Cube Infrastructure Managers SA and Granahan McCourt Dublin (Ireland) Limited. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 31 of the Complaint.

32. On April 5, 2017 Mr. David McCourt (Granahan McCourt Capital's chairman) discussed the proposed transaction with Cube during a Cube investor day attended by existing and prospective limited partners of Cube and made clear the sale process solely

14

involved Cube. During his presentation, McCourt stated: "so I went and I searched for someone that, in Europe, that understood telecom, that understood infrastructure, and that had the same view that I did. We didn't run an auction, we actually went out and seek out someone that had the same view we did, and we found Cube and we were happy to have found them. So, together, we sort of are re- buying these assets which I'm very happy about."

**ANSWER:** GMC admits that Mr. David McCourt spoke to certain individuals at the request of Cube. GMC is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 32 of the Complaint. Oak Hill is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint.

33. By April 20, 2017, GMC and Oak Hill still had not shared information necessary to complete the transaction documents. On April 20, 2017 Mr. Henri Piganeau wrote to McCourt: "I think we should rapidly agree on an extension of the exclusivity for a period reasonably sufficient to finalize the negotiation of all transaction documents, as is customary for such transactions." The same day McCourt, who appeared to speak for GMC, FundCo, Oak Hill and ESCF, throughout the parties [sic] negotiation stated that "as for extension on exclusivity I have no issue once we get by the issue that is new which is a new requirement around extension on franchise, and I get back your mark up to the mark up." (A true and correct copy of the parties [sic] email exchange is attached as Exhibit E with email addresses redacted.) These conditions for an extension were met, and as a result exclusivity was extended for a period reasonably sufficient to finalize the negotiation of all transaction documents.

RLF1 19896324v.1

**ANSWER:** Defendants deny the allegations in the first sentence of Paragraph 33 of the Complaint. As to the second and third sentences of Paragraph 33, Defendants respectfully refer the Court to the email exchange attached as Exhibit E to the Complaint for its contents and deny any characterizations inconsistent therewith. Defendants deny any remaining allegations in the second and third sentences. Defendants deny the allegations in the fourth sentence of Paragraph 33 of the Complaint.

34. On April 21, 2017, GMC and Oak Hill shared an initial draft of the step plan setting out the new transaction structure.

**ANSWER:** Defendants admit that on April 21, 2017, a representative of FundCo emailed a draft step plan setting out the transaction structure to a Cube representative and copied other individuals on the email. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 34 of the Complaint.

35. Consistent with their exclusive negotiations, McCourt and Mr. Henri Piganeau (Cube's Managing Partner), together with their respective legal advisors, had scheduled daily conference calls (beginning on May 31, 2017) to ensure constant communication between the parties and to facilitate a swift resolution of any issue in order to enable signing to occur as soon as possible. Cube and a representative of the counterparties to the LOI also undertook certain actions which they would have not taken if there had been doubts about exclusivity or the fact that confidentiality would be maintained. In agreement with McCourt, these actions included: a) carrying out Know Your Customer ("KYC") processes with the European Investment Bank, an important limited partner of Cube, in order to obtain from it, as lender of the target companies, one of the change of control approvals for closing of the transaction, and

16

b) seeking waivers and consents to change of control, which typically are only requested after final transaction documentation is signed, from various banks and the Irish government. Cube also set up its own investment vehicle of which Bernard Keogh, General Counsel for enet and GMC, was a board member. Indeed, at this point McCourt and Mr. Piganeau were so far along in transaction discussions that they were already discussing other potential acquisitions in Europe.

**ANSWER:** Defendants deny the allegations in the first, second and third sentences of Paragraph 35 of the Complaint as stated. By way of further response, Defendants deny that they had any obligation to negotiate exclusively with Cube after April 10, 2017. Defendants admit the allegations in the fourth sentence of Paragraph 35 of the Complaint. Defendants deny the allegations in the fifth sentence of Paragraph 35 of the Complaint.

36. On or about June 8, 2017, a representative of Cube sent a draft subscription and shareholder agreement and a draft constitution of Cube Broadbank Ireland Limited drafted by Cube's counsel at great time and expense to representatives of GMC.

**ANSWER:** Defendants admit that on June 8, 2017, William Fry sent a draft subscription and shareholder agreement and a draft constitution of Cube Broadbank Ireland Limited to Feinberg Hanson. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 36 of the Complaint.

37. On June 20, 2017, GMC and Oak Hill's counsel, Arthur Cox, finally shared the version of the step plan for inclusion in the share purchase agreement.

**ANSWER:** Defendants admit that on June 20, 2017, Arthur Cox, counsel for GMC, emailed a version of the step plan for inclusion in the share purchase agreement to William Fry, Cube's counsel. Defendants deny any remaining allegations in Paragraph 37 of the Complaint.

17

38.     As discussions continued, during a July 9, 2017 phone conversation Mr. Scott Krase (a Senior Advisor for Oak Hill) acknowledged to Mr. Henri Piganeau that their discussions were "not an open process." That same day the Irish press reported that GMC, FundCo, Oak Hill and ESCF were separately engaged in discussions with AMP.

**ANSWER:**     Oak Hill admits that Scott Krase and Mr. Henri Piganeau engaged in a telephone conversation on July 9, 2017.   Oak Hill is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 38 of the Complaint.  GMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint.

39.     The next day as Mr. Piganeau was preparing to fly to New York for a July 11, 2017 signing meeting to execute the substantially finalized transaction documentation, he was told to "please wait."

**ANSWER:**     Defendants admit that Mr. Pigaeneau was advised not to travel to New York for any alleged meeting.  Defendants deny that a signing meeting to execute the substantially finalized transaction documentation was scheduled for July 11, 2017.  Defendants are without knowledge or information sufficient to form a belief as to any remaining allegations in Paragraph 39 of the Complaint.

40.     Rather than disclosing their separate negotiations with AMP, on July 13, 2017 GMC and Oak Hill's counsel Arthur Cox instead provided final consolidated accounts for the new proposed target company.

**ANSWER:**     Defendants admit that on July 13, 2017, Arthur Cox, counsel for GMC, emailed consolidated financials for GMC D-OH (Ireland) Intermediate Holdings Limited to Cube.  Defendants deny any remaining allegations in Paragraph 40 of the Complaint.

18

41.     In a July 15, 2017 email Krase confirmed the press reports that GMC, FundCo, and ESCF had agreed to sell a 78% interest in Holdings to AMP for €19 million more than the proposed transaction with Cube.  Krase offered Cube a new purchase price equal to the AMP transaction, which was more than the agreed upon price of €141.50 million provided in the LOI. The same day McCourt confirmed via email to Mr. Piganeau that the Cube transaction documents were "done."

**ANSWER:**     Oak Hill denies the allegations in the first and second sentences of Paragraph 41 of the Complaint.  Oak Hill is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 41 of the Complaint. GMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentence of Paragraph 41 of the Complaint.  GMC denies any remaining allegations in Paragraph 41 of the Complaint.

42.     McCourt also admitted to Mr. Piganeau on July 18, 2017, that GMC, FundCo, Oak Hill and ESCF used the confidential details of Cube's negotiated contract terms as reflected in the Cube shareholders' agreement, the stock purchase agreement and other transaction documents to expeditiously reach an agreement with AMP, all in breach of the NDA's and LOI's express terms.  These transaction documents were shared without Cube's consent and existed due to the hard work, time, energy, deal expertise and money that Cube invested in the proposed transaction with Holdings.

**ANSWER:**     Defendants deny the allegations in Paragraph 42 of the Complaint.

43.     On July 28, 2017 AMP publicly announced that it had entered into an agreement to acquire a 78% stake in Holdings' shares.

19

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint.

44. The transaction with AMP closed in late October, 2017.

**ANSWER:** Defendants admit the transaction with AMP closed on October 20, 2017. Defendants are without knowledge or information sufficient to form a belief as to any remaining allegations in Paragraph 44 of the Complaint.

45. Cube has been significantly damaged by the breaches of the NDA and LOI including, but not limited to, incurring transaction expenses, damage to its reputation and losing a valuable transaction with Holdings worth at least €19 million more than the Consideration contemplated by the LOI.

**ANSWER:** Defendants deny the allegations in Paragraph 45 of the Complaint.

## FIRST CAUSE OF ACTION
*(Breach of NDA by GMC)*

46. The allegations contained in the previous paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to the preceding Paragraphs 1-45 as if fully set forth herein.

47. The NDA is a valid and binding contract between Cube and GMC.

**ANSWER:** Paragraph 47 states a conclusion of law to which no response is required.

48. Cube has performed all its obligations under the NDA.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint.

RLF1 19896324v.1

49. GMC breached the NDA by disclosing details connected with its discussions or negotiations with Cube, by providing the transaction documents and other confidential or proprietary information to a third party and by using Cube's confidential and propriety information for a purpose other than the proposed transaction whereby Cube was to acquire an interest in Holdings, all without the prior approval of Cube.

**ANSWER:** Defendants deny the allegations in Paragraph 49 of the Complaint.

50. Cube is entitled to any and all compensatory damages flowing from GMC's breach of contract.

**ANSWER:** Defendants deny the allegations in Paragraph 50 of the Complaint.

**SECOND CAUSE OF ACTION**
*(Tortious Interference with NDA by Oak Hill)*

51. The allegations contained in the previous paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to the preceding Paragraphs 1-50 as if fully set forth herein.

52. Oak Hill, through its ownership and control of ESCF, knew or should have known of the NDA between GMC and Cube.

**ANSWER:** Defendants admit that Oak Hill knew of an NDA between GMC and Cube. Defendants deny any remaining allegations in Paragraph 52 of the Complaint.

53. Upon information and belief, Oak Hill intentionally interfered with Cube's NDA with GMC by acting with GMC to misappropriate Cube's confidential information for use in the transaction with AMP and by procuring GMC's breach of the NDA.

**ANSWER:** Defendants deny the allegations in Paragraph 53 of the Complaint.

RLF1 19896324v.1

54.     Oak Hill's actions were intentional, wrongful and without justification or privilege.

**ANSWER:**    Defendants deny the allegations in Paragraph 54 of the Complaint.

55.     Cube has been damaged by Oak Hill's intentional conduct in an amount provable at trial.

**ANSWER:**    Defendants deny the allegations in Paragraph 55 of the Complaint.

## THIRD CAUSE OF ACTION
*(Tortious Interference with LOI by Oak Hill)*

56.     The allegations contained in the previous paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses to the preceding Paragraphs 1-55 as if fully set forth herein.

57.     The LOI was a valid and binding contract between FundCo, ESCF and Cube.

**ANSWER:**    Paragraph 57 states a conclusion of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint.

58.     Oak Hill through its relationship with ESCF, knew or should have known of the LOI between FundCo, ESCF and Cube.

**ANSWER:**    Defendants admit that Oak Hill knew of the LOI between FundCo, ESCF and Cube attached to the Complaint as Exhibit C.

RLF1 19896324v.1

59. Oak Hill intentionally interfered with the LOI by misappropriating Cube's confidential information and by procuring FundCo's breach of its obligation to negotiate exclusively with Cube.

**ANSWER:** Defendants deny the allegations in Paragraph 59 of the Complaint.

60. Oak Hill intentionally interfered with the LOI by procuring FundCo's breach of its obligation to negotiate in good faith with Cube.

**ANSWER:** Defendants deny the allegations in Paragraph 60 of the Complaint.

61. Oak Hill's actions were intentional, wrongful and without justification or privilege.

**ANSWER:** Defendants deny the allegations in Paragraph 61 of the Complaint.

62. Cube has been damaged by Oak Hill's intentional conduct which procured a breach of the LOI in an amount provable at trial.

**ANSWER:** Defendants deny the allegations in Paragraph 62 of the Complaint.

## FOURTH CAUSE OF ACTION
*(Tortious Interference with LOI by GMC)*

63. The allegations contained in the previous paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to the preceding Paragraphs 1-62 as if fully set forth herein.

64. The LOI was a valid and binding contract between FundCo, ESCF and Cube.

**ANSWER:** Paragraph 64 states a conclusion of law to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Complaint.

23

65.     GMC through its relationship with FundCo, knew or should have known of the LOI between FundCo, ESCF and Cube.

**ANSWER:**    Defendants admit that GMC knew of the LOI attached to the Complaint as Exhibit C.

66.     GMC intentionally interfered with the LOI by misappropriating Cube's confidential information and by procuring ESCF's breach of its obligation to negotiate exclusively with Cube.

**ANSWER:**    Defendants deny the allegations in Paragraph 66 of the Complaint.

67.     GMC intentionally interfered with the LOI by procuring ESCF's breach of its obligation to negotiate in good faith with Cube.

**ANSWER:**    Defendants deny the allegations in Paragraph 67 of the Complaint.

68.     GMC's actions were intentional, wrongful and without justification or privilege.

**ANSWER:**    Defendants deny the allegations in Paragraph 68 of the Complaint.

69.     Cube has been damaged by GMC's intentional conduct which procured a breach of the LOI in an amount provable at trial.

**ANSWER:**    Defendants deny the allegations in Paragraph 69 of the Complaint.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses in response to the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated below.   Defendants specifically reserve the right to

RLF1 19896324v.1

supplement or amend this answer to assert any and all affirmative defenses which may become available through information developed in discovery, at trial, or otherwise.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

Cube's claims are barred because Defendants did not breach any agreement.

## THIRD DEFENSE

Cube's claims are barred, in whole or in part, because it has not suffered any damages as a result of any alleged breach of contract or tortious interference.

## FOURTH DEFENSE

Complete relief cannot be accorded among those already parties, and Cube's claims may be barred by failure to join an indispensable party or real party in interest necessary for the just adjudication of this matter. In the alternative, the disposition of this action without the presence of additional, unnamed parties may result in Defendants being subject to a risk of incurring inconsistent obligations.

## FIFTH DEFENSE

Cube's claims are barred, in whole or in part, because they failed to mitigate any purported damages.

## SIXTH DEFENSE

Any alleged harms and/or damages purportedly suffered by Cube were caused, in whole or in part, by Cube's actions and/or inaction.

RLF1 19896324v.1

**PRAYER FOR RELIEF**

Wherefore, Defendants respectfully request that the Court dismiss the Complaint with prejudice and enter judgment in favor of Defendants, and that Defendants be awarded their costs, expenses and such other and further relief as the Court deems fair and just.

/s/ Steven J. Fineman
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
Tyler Cragg (#6398)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
fineman@rlf.com
mowery@rlf.com
cragg@rlf.com

Dated: August 22, 2018

*Attorneys for Defendants Granahan McCourt Dublin, LLC and Oak Hill Advisors, LP*